# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sharon Corderman, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1208 C.D. 2015 |
| | : | Submitted: November 20, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
                     HONORABLE ROBERT SIMPSON, Judge
                     HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                                   **FILED: December 23, 2015**

Sharon Corderman (Claimant), representing herself, petitions for review of an order of the Unemployment Compensation Board of Review (Board) denying her unemployment compensation (UC) benefits under Section 402(b) of the UC Law (Law) on the basis she voluntarily quit her employment.[1]  Claimant, who suffered from chronic medical conditions and fatigue at the time she resigned her position with the Tioga Publishing Company (Employer), contends the Board erred in holding she did not have a necessitous and compelling reason for leaving her job.  Claimant further asserts the Board erred in determining she failed to exhaust all her alternatives prior to leaving her employment.  While sensitive to Claimant's situation, we are constrained to affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b).  Section 402(b) of the Law provides "[a]n employe shall be ineligible for compensation for any week … [i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …."  43 P.S. §802(b).

## Background

In affirming the referee's decision, the Board adopted the referee's findings and conclusions. Claimant last worked for Employer as a newspaper editor in a full-time capacity. As of January 9, 2015, Claimant's last day of work, she earned $30,000 per year.

Claimant, a salaried employee, did not work set hours scheduled by Employer. Rather, Claimant could set her own hours as long as she fulfilled all duties and responsibilities for creating and publishing the newspaper. On average, Claimant worked approximately 50-60 hours per week to meet Employer's expectations.

In September 2012, Claimant began to suffer from a chronic methicillin-resistant staphylococcus aureus (MRSA) infection and anemia. Claimant's medical condition included facial lesions, swelling and inflammation.

In view of Claimant's medical condition, Employer allowed Claimant to work from home as much as needed to avoid too much interaction with the public. Although Claimant remained under a doctor's care for treatment for MRSA, anemia and fatigue, her doctor did not advise her to limit her work hours.

As a result of Claimant's worsening medical conditions, she voluntarily resigned her employment on January 9, 2015. Claimant believed the amount of hours she worked for Employer contributed to her fatigue.

Prior to leaving, Claimant did not discuss any alternatives with Employer. Claimant, however, remained able to perform any type of work, except manual labor, for up to 40 hours per week.

Claimant applied for UC benefits. Initially, the Department of Labor and Industry (Department), through its local UC service center, issued a notice of determination finding Claimant eligible for benefits under Section 402(b) (voluntary quit for necessitous and compelling reason) and Section 401(d)(1)[2] (able to work and available for suitable work) of the Law. The Department determined Claimant informed Employer of her work limitations, and Employer did not offer Claimant alternative work.

Employer appealed, and the Board scheduled a referee's hearing. Before the referee, Claimant testified on her own behalf. Employer's publisher and Claimant's supervisor, David Sullens (Publisher), testified for Employer.

Following the hearing, the referee issued a decision and order affirming the UC service center's determination to the extent it ruled Claimant eligible for benefits under Section 401(d)(1). However, the referee reversed the service center and ruled her ineligible for benefits under Section 402(b). In his decision, the referee reasoned (with emphasis added):

> In the present case, [Claimant] had a medical condition which caused facial lesions as well as swelling and inflammation to her face. [Employer] was aware of [Claimant's] medical condition and her diagnosis, and

---

[2] 43 P.S. §801(d)(1).

3

> allowed [Claimant] to work at home when needed to avoid interaction with the public and others. [Claimant] was also able to set her own hours, and did not have any specified number of hours that she would have to work a week as long as she was able to fulfill her duties as the editor. Not only was it [Claimant's] choice to work 50 to 60 hours per week, it was also her choice to voluntarily leave her employment without discussing any other options available to her with [Employer]. Therefore, the referee does not find that [Claimant] exhausted all alternatives prior to severing the employer/employee relationship, and made a personal choice to leave her employment when continuing work was available to her.

Referee's Dec., 3/13/15, at 2.

On appeal, the Board, adopting and incorporating the referee's findings and conclusions, affirmed. Claimant petitions for review.[3]

## Discussion

### A. Argument

Claimant contends the Board erred in holding she did not have a necessitous and compelling reason for leaving her job. Claimant also maintains the Board erred in determining she failed to exhaust all her alternatives prior to leaving her employment. In order to establish a necessitous and compelling reason to quit, a claimant must show: circumstances existed that produced a real and substantial pressure to terminate employment; such circumstances would compel a reasonable

---

[3] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256 (Pa. Cmwlth. 2015).

4

person to act in the same manner; the claimant acted with ordinary common sense; and, the claimant made a reasonable effort to preserve her employment. Collier Stone Co. v. Unemployment Comp. Bd. of Review, 876 A.2d 481 (Pa. Cmwlth. 2005).

Here, Claimant asserts, at the time she resigned, she suffered from chronic medical conditions that prevented her from adequately performing her job duties. In particular, Claimant suffered from MRSA, which is contagious and caused Claimant to suffer facial lesions, which drained throughout the day. Claimant's facial lesions prevented her from interacting with the public. In addition, Claimant suffered from anemia and fatigue, which prevented her from completing her job duties in a competent manner.

Claimant would eventually undergo successful treatment, including scheduled surgery. However, at the time of her decision to leave her employment in December 2014, Claimant's worsening condition rendered her unable to continue in the position she held. Therefore, Claimant argues, a reasonable person in her situation at that time would not have continued to work because of her medical condition.

Claimant also contends she acted with common sense. Ordinary common sense dictates that a person with a contagious disease should not interact with others. Further, because her condition continued to deteriorate, Claimant knew she needed to change her current position and end her employment to preserve her health.

5

With respect to her efforts to preserve her employment, Claimant asserts that in June 2014, she spoke with Employer about her condition following a particularly bad flare-up of facial inflammation. She also emailed Employer a photo of herself.

Thereafter, Claimant and Employer spoke briefly about her health on several occasions over the following months. In September 2014, Claimant asked her doctor for a referral to a specialist after Employer suggested Claimant find a different doctor because her condition failed to improve. Further, in an email response to her resignation letter, Employer acknowledged Claimant's deteriorating health and indicated he was glad Claimant was taking some time to care for herself.

However, Claimant admits she had no specific conversations with Employer about alternatives to her workload or her ability to continue to fulfill her work duties. Claimant asserts Employer could not lighten her workload or lessen her hours because Employer had no other employees to whom it could delegate her work.

Claimant further asserts she could not work from home because the job of a newspaper editor and reporter is to cover the news, attend functions and events, and interact with the public. As the only person on staff, Claimant could not avoid public interaction on a regular or daily basis.

Summarizing, Claimant contends her deteriorating health prevented her from staying in her position as Employer's editor because she could no longer physically or mentally handle the job. Therefore, Claimant argues she did have a necessitous and compelling reason for voluntarily quitting her job. As such, Claimant urges the Board erred in finding her ineligible for benefits under Section 402(b) of the Law.

## B. Analysis

An employee who claims to have left employment for a necessitous and compelling reason and seeks UC benefits under Section 402(b) of the Law has the burden of proof and must show that:

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment.

Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). Conversely, Employer has no burden of proof in a voluntary quit case. Johnson v. Unemployment Comp. Bd. of Review, 869 A.2d 1095 (Pa. Cmwlth. 2005).

Medical problems can provide necessitous and compelling reasons for a voluntary quit. Fox v. Unemployment Comp. Bd. of Review, 522 A.2d 713 (Pa. Cmwlth. 1987). The claimant maintains the burden of proving the existence of a necessitous and compelling cause. Nolan v. Unemployment Comp. Bd. of Review,

7

797 A.2d 1042 (Pa. Cmwlth. 2002). In order to prevail in such a case, the claimant must prove that she communicated the nature of her medical problem to the employer and explained why she could not continue to perform her regularly assigned duties. Id. If the claimant does not make this initial effort, the employer can not properly exercise its managerial judgment in locating suitable and available work. Bailey v. Unemployment Comp. Bd. of Review, 653 A.2d 711 (Pa. Cmwlth. 1995).

Here, Claimant testified she came under a doctor's care for MRSA and anemia in 2012. Referee's Hr'g, Notes of Testimony[4] (N.T.), 3/12/15, at 7. Claimant further testified she worked an average of 50-60 hours per week and this contributed to her fatigue. Referee's Dec., Findings of Fact (F.F.) Nos. 4, 7; N.T. at 7. However, Claimant's doctor did not place any restrictions on Claimant's work duties or limit the hours she could work. F.F. No. 6; N.T. at 7.

In late June 2014, Claimant advised Employer of her continuing health issues and sent Employer a photo; in response, Employer allowed Claimant to work from home as much as she needed. F.F. No. 5; N.T. at 7-8. Because Claimant saw Publisher on occasion and Claimant had a chronic facial infection, she testified her condition was obvious. N.T. at 8.

Nevertheless, Claimant resigned seven months later in January 2015. At no time prior to her resignation did Claimant inform Employer that she had to quit because of her deteriorating health. F.F. No. 8; N.T. at 8. To that end, the referee had the following discussion with Claimant (with emphasis added):

---

[4] Certified Record, Item No. 10.

8

R.   So, if that was the end of June of 2014, what happened between that period and January 9, 2015 that caused you to leave?

C.  I continued to become more and more fatigued and run down.  I was on antibiotics throughout that entire time and it was not getting better.  My health was continuing to deteriorate.

R.  Okay.  Did you have a discussion with [Publisher] or anyone else, you know, as your health was deteriorating, any time before you ended up leaving, but was after June of 2014?  Did you let them know what was going on?  Did you say anything?

C.  We saw each other on occasion, so it – he – I mean it was clear – because the situation was on my fac[e], it was kind of obvious, what was happening and it's – I didn't complain, I guess or say a whole lot about it.  I wanted it very much to get better.

R.  Okay, but did you say anything, as to, you know, with the amount of hours that I'm working, I have a lot of fatigue, you know, I'm tired all the time, anything like that?  I mean I understand your testimony as to being based upon the medical condition being on your face that it was obvious you had a medical condition, but did you discuss, you know, what was going on with the fatigue and being tired or anything like that?

C.  We – no, I guess neither of us really brought it up or discussed it in any detail.

N.T. at 8.

Furthermore, based on Publisher's testimony, the referee found Employer did not set Claimant's hours; Employer required only that Claimant fulfill her job duties and responsibilities.  F.F. No. 4; N.T. at 12-13.  Claimant agreed Employer never required a mandatory minimum of hours.  N.T. at 13.  However,

9

Claimant deemed it her obligation to do the best job she could to assemble a weekly paper from start to finish, and given her deteriorating health, she could no longer do that. Id.

A claimant who voluntarily quits her job for health reasons must inform her employer of her health problems prior to leaving employment in order to provide the employer with an opportunity to accommodate the claimant's problems. Genetin v. Unemployment Comp. Bd. of Review, 451 A.2d 1353 (Pa. 1982); Lee Hosp. v. Unemployment Comp. Bd. of Review, 637 A.2d 695 (Pa. Cmwlth. 1994). Once this burden is met, the burden then shifts to the employer to find a reasonable accommodation for the employee. Elshinnaway v. Unemployment Comp. Bd. of Review, 317 A.2d 332 (Pa. Cmwlth. 1974). However, a claimant's failure to inform her employer that she intends to quit because of her health problems bars a claim for UC benefits under Section 402(b) of the Law. Anne Kearney Astolphi DMD, Inc. v. Unemployment Comp. Bd. of Review, 995 A.2d 1286 (Pa. Cmwlth. 2010).

Here, Claimant acknowledges she did not discuss with Employer her deteriorating health or its effect on her ability to continue performing the duties of her position prior to her voluntary resignation in January 2015. F.F. No. 8; N.T. at 8. Claimant attributed her inability to maintain her employment in large part to the excessive hours she worked each week. However, Claimant did not afford Employer an opportunity to address her health needs or concerns with respect to her job duties and responsibilities. As such, it is unknown whether Employer could have accommodated Claimant during her period of illness. In short, Claimant failed to make a meaningful attempt to preserve her employment by providing Employer a

10

reasonable opportunity to find a suitable accommodation for Claimant's health problems.

Although we sympathize with Claimant in her battle with MRSA, we nevertheless acknowledge that Claimant's failure, to inform Employer of her deteriorating health and its effect on her ability to continue performing her job duties, deprived Employer of any opportunity to make a reasonable attempt at finding a suitable accommodation for Claimant's condition. Genetin; Kearney Astolphi; Lee Hosp. Claimant testified that when she sent her letter of resignation to Employer, she was hoping some other option would be made available. N.T. at 14. However, Claimant's conscious choice to terminate her employment without informing Employer of the specific nature of her illness foreclosed Employer from pursuing any alternatives. Bailey. Consequently, we are constrained to agree with the Board that Claimant's failure to make reasonable efforts to preserve her employment before her voluntary quit in January 2015 rendered her ineligible for UC benefits under Section 402(b) of the Law. Genetin; Kearney Astolphi; Lee Hosp.

For this reason, we affirm the Board's order.

_____
ROBERT SIMPSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon Corderman, :
              Petitioner :
               :
            v. : No. 1208 C.D. 2015
               :
Unemployment Compensation :
Board of Review, :
            Respondent :

# **O R D E R**

**AND NOW**, this 23rd day of December, 2015, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                _____

                                ROBERT SIMPSON, Judge